UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NKEREUWEM TAYLOR UKO,

        Plaintiff,

v.                                                              Case No. 17-cv-1260-pp

MICHELLE SMITH,

        Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 15) AND DISMISSING CASE**

---

On September 19, 2017, the plaintiff (who doesn't have a lawyer representing her) filed a complaint suing "IRIS PROGRAM, STATE OF WISCONSIN, (Michelle Smith)." Dkt. No. 1. The court screened the complaint, concluding that the plaintiff possibly might have a claim that her disenrollment from the IRIS program violated her civil rights under 42 U.S.C. §1983 but requiring the plaintiff to file an amended complaint so that the court could better understand that claim. Dkt. No 5. The plaintiff filed an amended complaint suing the "IRIS Program, State of Wisconsin, Jody Brassfield, Section Chief-Office of IRIS Management, Michelle Smith, IRIS Consultant." Dkt. No. 7 at 1. The court screened the amended complaint and dismissed the claims against all defendants except Michelle Smith. Dkt. No. 8. Smith responded to the amended complaint with a motion to dismiss under Federal

1

Rule of Civil Procedure 12(b)(6). Dkt No. 15. The court will grant the motion to dismiss.

## I. Discussion

### A. Legal Standard Governing Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). When evaluating a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. AnchorBank, FSB v. Hofer, 649 F.3d 610, 614 (7th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In this context, "plausible," as opposed to "merely conceivable or speculative," means that the plaintiff must include "enough details about the subject-matter of the case to present a story that holds together." Carlson v. CSX Transp., Inc., 758 F.3d 819, 826-27 (7th Cir. 2014) (quoting Swanson v. Citibank, N.A., 614 F.3d 400, 404-05 (7th Cir. 2010)). "[T]he proper question to ask is still could these things have happened, not did they happen." Id. at 827 (internal quotation and citation omitted). The plaintiff "need not 'show' anything to

survive a motion under Rule 12(b)(6)—he need only allege." Brown v. Budz, 398 F.3d 904, 914 (7th Cir. 2005).

B. Amended Complaint

The plaintiff stated in the amended complaint that she is an eighty-three-year-old woman with limited mobility who received "living assistance services" from the Wisconsin Department of Health Services' "IRIS" program. Dkt. No. 7 at 2. ("IRIS" stands for "Include, Respect, I Self-Direct;" the program provides Medicaid-eligible frail elders and adults with disabilities with services to help them lead self-directed lives. https://www.dhs.wisconsin.gov/iris.index.htm.) The plaintiff also alleges that she is an Nigerian American. Dkt. No. 7 at 3. The amended complaint alleges that that the IRIS program "dis-enrolled" the plaintiff on May 31, 2017. Id. at 2.

The only allegations in the amended complaint that relate to Smith appear on page 2, where the plaintiff alleges that Smith "started relating to [the plaintiff] with threatening statements and was not willing to make any adjustments." Dkt. No. 7 at 2. The plaintiff alleged that "Michelle's conditions are to: meet outside of [the plaintiff's] home; have interpreter for herself; remove [the plaintiff's] daughter from home." Id. The plaintiff asserts that these conditions "contradict IRIS policy." Id. The plaintiff also denies that she "and her Representative" refused to meet with Smith. Id.

The plaintiff claims that she appealed the agency decision, "the hearing and rehearing failed," the court denied judicial review, and the Wisconsin appellate courts denied her claim. Id. at 2-3.

3

As relief for the alleged violation, the plaintiff requests that

(1) the court decision be reversed in order to redress issues concerning her, as well as reinstate her benefits. The standard of review employed features "silence" while [the plaintiff] and her family are treated with substances amounting to negative medications causing her and the rest of the family members emotional distresses. Deliberations overheard from these resources point to unwillingness to relinquish the: oneness of tire (Michelin USA); surrogate children (stem cell/genetic research products and other holdings pertaining to her by organization(s) disguising themselves and utilizing government agencies/other agencies as conduits for torts against her. [The plaintiff] requests the Court to: investigate this body; Michelin and surrogate children issues and to cause the release of Michelin and surrogates. Also, protect her and her family against these bodies as well as award judgements to commensurate with the torts done to them. Mind Reader Resources can substantiate these statements."

Id. at 4.

When the court screened the amended complaint, it liberally construed the plaintiff's claims given that she does not have a lawyer, and acknowledged that she *might* be trying to assert a claim under 42 U.S.C. §1981a for contract discrimination based on national origin. Dkt. No. 8 at 4. Acknowledging that a plaintiff cannot sue solely based on national origin discrimination under §1981, the court also considered whether the plaintiff might be trying to assert an equal protection claim under the Fourteenth Amendment. Id. The court allowed the plaintiff to proceed on a Fourteenth Amendment claim against Michelle Smith. Id. at 4-5.

At the same time, the court explained to the plaintiff that it cannot grant much of the relief requested. Id. at 5. The court told the plaintiff that it did not (and still does not) understand the allegations about Michelin USA or surrogate children, that the court has no authority to investigate an unknown body, and

that the court would not consult with Mind Reader Resources in ruling on the plaintiff's claims. Id.

    C.    <u>Smith's Motion to Dismiss (Dkt. No. 15)</u>

The defendant asks the court to dismiss the complaint because she is not a state actor, and 42 U.S.C. §1983 allows plaintiffs to sue only individuals who are acting under color of state law. Dkt. No. 15 at 1. Smith asserts that she is employed by a private entity (something called "TMG"), not a state agency. <u>Id.</u> The defendant says that TMG—her employer—and its consultants "serve the public by helping Medicaid-eligible people navigate Wisconsin's IRIS program and connecting them with partner agencies and community resources that allow them to self-direct their long-term care." <u>Id.</u> at 6. She maintains that this conduct is not enough to demonstrate that she or her employer were acting as arms of the state, or the state's designees. <u>Id.</u> at 6-7.

Smith also argues that the plaintiff has not pled any facts indicting that Smith took any actions because of the plaintiff's national origin. <u>Id.</u> at 2, 9. Smith asserts that the plaintiff has not alleged that Smith treated her differently from other IRIS participants, or that Smith took any action against the plaintiff *because* of her national origin. <u>Id.</u> at 9. At best, Smith says, the plaintiff has alleged that Smith imposed unreasonable requirements on her, and that the plaintiff is Nigerian American. <u>Id.</u>

Finally, Smith asked the court to dismiss the plaintiff's complaint with prejudice, barring her from filing any future complaints based on the same facts. <u>Id.</u> at 10-11.

5

D. Plaintiff's Response (Dkt. No. 18)

The plaintiff's response to the motion to dismiss raises several concerns. There are two signatures on the response, the plaintiff's and that of "Representative Udeme T. Ndon, Ph.D." Dkt. No. 18 at 18. Ndon also signed the plaintiff's supporting brief, dkt. no. 4 at 3; the plaintiff's response to the court's order filed on June 18, 2018; a response to the court's order dismissing the IRIS program and Jody Brassfield as defendants, dkt. no. 10; and an amended response to the order dismissing the IRIS program and Brassfield, dkt. no. 11. The complaint and amended complaint, signed by Nkereuwen Taylor Uko, use Ndon's email address ("Udeme Ndon epkedeme@gmail.com"). Dkt. Nos. 1 at 5; 5 at 5; 18 at 6.

Ndon is not an attorney. She lists her honorific as "Ph.D." The court searched the State Bar of Wisconsin's public database, www.wisbar.org, and there is no one named Ndon licensed to practice law in Wisconsin. The plaintiff herself attached to her original complaint a Milwaukee County Circuit Court order dismissing her request for judicial review because the complaint was signed by the plaintiff's daughter, "Dr. Udeme Taylor Ndon, who does not have a law license." Dkt. No. 1-1 at 1. The Wisconsin Court of Appeals declined to take any further action on her appeal because Ndon continued to appear on the plaintiff's behalf. Dkt. No. 1-2 at 1.

Representative parties such as next friends may not conduct litigation on someone's behalf without the assistance of an attorney; only parties or lawyers representing parties may file pleadings in federal court. See 28 U.S.C. §1654

6

(providing that "parties may plead and conduct their own cases personally or by counsel"); Fed. R. Civ. P. 11(a) (requiring that every motion be signed by an attorney or a party proceeding *pro se*). See also Lewis v. Lenc–Smith Mfg. Co., 784 F.2d 829, 830–31 (7th Cir.1986) (*per curiam* ). Fed. R. Civ. P. 17(c) allows an incompetent person to appear with a representative but the plaintiff has provided no evidence that she is incompetent. Even if Ndon could appear as the plaintiff's representative, she could not do so without an attorney. "It goes without saying that it is not in the interest of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990). Ndon may not file pleadings in federal court on behalf of her mother.

The plaintiff's brief in opposition to the motion to dismiss contains many allegations that involve Ndon. For example, the brief includes the following two paragraphs:

> The issues presented in Image 1 titled "Other Pertinent Information" have been reported to other government agencies as findings resulting from numerous enquiries to the Mind Reader Resources asking the overheard voices why they are doing what they doing to [the plaintiff's] family. Deliberations overheard from the Mind Reader Resources point to the "unwillingness to relinquish" [the plaintiff's] holdings (see Image 1 "Other Pertinent Information") by the organization(s) disguising themselves and utilizing government agencies and other agencies as conduits for torts against her.
>
> This "unwillingness to relinquish" is concealed in the way [the plaintiff] and her relatives were treated by Ms. Smith as her actions were in line with the overhead voices demands. A reasonable person would believe that these were and are attempts to prevent [the

7

> plaintiff] and relatives from attempting to investigate the contents of the "Other Pertinent Information"—"oneness of tire" trademark taken to Michelin tire USA by Mr. Garner; and identifying with the surrogate (test tube) babies of which [the plaintiff] is the biological grandmother. Her first daughter (Dr. Udeme Taylor Ndon) being the biological mother. It is noted that all gynecological procedures her daughter, Ndon, had in the past have reportedly resulted in extraction of her eggs for the mentioned surrogate children. These children are raised as sub-humans and considered "will not live." Watching some of these children on her street, she made remarks such as, "they move around as sheep without shepherds." She also noted that the influx of them changes with seasons.

Dkt. No. 18 at 10.

In the brief, Ndon itemizes her grievances with respect to "surrogate," "Michelin," "Ndon's book" and "Palm Oil Business." Id. at 11. Ndon explains that her eggs were extracted in 1983 and that her husband had infertility treatments in 1993. Ndon believes she is the mother of test tube babies living in Milwaukee and "scantily elsewhere," making her what the Mind Reader Resources call the "Earth Mother." Id. Ndon asserts these children are not being taken care of and that they are "money making merchandise for the underworld of organization" "raised as sub-humans in that they are subjected to extreme poverty, neglects and torture and labeled as 'they will not live.'" Id.

Ndon asserts that she is the late Taylor Uko's daughter. Id. Although Taylor Udo Uko passed away in 1970, the Mind Reader Resources have identified him as the inventor of "an idea (making tire as one)" and Udo began supporting this idea in the 1950s. Id. It was a joint venture with Mr. Garner, who brought the idea to Michelin Group USA; voices have told Ndon that there is a large amount of money in her Nigerian bank account and Michelin money "buried in the basement of 6916/14 N. 42, Milwaukee, WI 53209." Id. Since

April 2017, she asserts, someone has disfigured Ndon's posture to "emulated individuals that will look like Ndon" to go to Nigeria and withdraw money from her account. Id. These people have used body mass reduction measures, acid rain, chemical treatments and ghost invocations. Id. Other allegations involve a book for which Ndon has not been paid and Ndon's father-in-law's investment in the palm oil business in Ibo land, Nigeria. Id.

On page 17 of the brief in response to the motion to dismiss, either the plaintiff or Ndon explains that Ndon's husband was forced to leave the country and that Ndon did not go back to work at the University of Wisconsin-Milwaukee. Id. at 17. She cites Ndon v. UWM, Case No. 11-cv-990-JPS as evidence that a case about those events now is before the U.S. Supreme Court. Id. While there was a case with that name and number pending, the Seventh Circuit dismissed the appeal on May 21, 2013 for lack of jurisdiction. Ndon v. University of Wisconsin-Milwaukee, Case No. 11-cv-990, Dkt. No. 64.

Another troubling aspect of the plaintiff/Ndon's response brief is that they appear to be trying to file a third amended complaint, reincorporating a defendant the court already has dismissed. At page 2, they insist that the principal actors are "Michelle Smith, Consultant (filed agent) and Jody Brassfield, Administrator, representing IRS Program in their official capacities and both of them remain standing in Uko's case." Dkt. No. 18 at 2. The court dismissed Brassfield in an order dated July 20, 2018. Dkt. No. 8. The plaintiff has no claim against Brassfield—she alleges no facts suggesting that Brassfield

9

violated the plaintiff's constitutional rights and she cannot sue Brassfield as Smith's supervisor. Dkt. No. 8 at 3.

The final five pages of the plaintiff/Ndon's brief discuss "the obvious elements that caused her and her relatives emotional distress." Dkt. No. 18 at 14-19. None of these "obvious elements" respond to Smith's motion to dismiss. The plaintiff/Ndon allege nuisance, but state no facts that support that allegation. Id. at 14. The plaintiff also alleges trespass/intrusion of privacy/invasion and assault/battery. Id. at 15-16. The assault and battery claims involve the people who live in the upper level of the plaintiff's duplex who talk to the mind reader resource in threatening ways causing Uko "bodily and organic pains." Id. at 16.

At the end of this submission, the plaintiff/Ndon asks for the following:

- Reverse earlier decision in order to redress her concerns, as well as reinstate her benefits. Primarily, a reconsideration to allow her continue with IRIS program and other terminated services as the decisions taken so far are pre-conceived/pre-text and have resulted in forced disenrollment and restricted care-giving to her as well as subjecting her to substandard living and loss of enjoyment of life.
- Award judgement to commensurate with the torts stated herewith.
- Order and enforce investigations of the surrogate (test tube) babies, the Michelin Group, USA issues.
- Order and enforce the investigations of the bodies that are using government machineries and other agencies as conduits to carry out the torts and pretext actions.
- Order and enforce the release of the surrogate children to the maternal family. At the May 10, 2017, [the plaintiff] mentioned that she wants to go back to Nigeria. It is her wish that her grandchildren including the surrogates go to Nigeria (her birth country) with her. This will allow these children a change of environment to positively regain functionality.

10

- Order and enforce the release of the holdings of the "oneness of tire" invention—[the plaintiff] and her offspring are the heirs of the Late Taylor Udo Uko's portion of the invention and investment.
- Taylor Uko and Garner have been identified as the original pattern owners of the oneness of tire, therefore, there should be some sort of payment(s) (in the form of Royalty) made to them and their heirs by other tire companies.
- Order transcripts from the Mind Reader Resources regarding Michelin deliberations and the surrogate (test tube) children.
- Provide protection to her and her relatives against these bodies.

Dkt. No. 18 at 19. These requests far exceed the scope of the claims on which the court allowed the plaintiff to proceed in the amended complaint, and the court will not discuss them further because they are frivolous.

E. Analysis

When reviewing the amended complaint, the court speculated that the plaintiff might have been trying to state an equal protection claim under §1983 based on the plaintiff's national origin. The plaintiff identified Smith as an "IRIS consultant," and, without more, the court concluded that there could be a scenario under which Smith worked for IRIS and could be a state actor. Smith has asserted that she is an employee of TMG—not a state actor.

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that the defendant violated a right secured by the Constitution or laws of the United States and that the defendant who deprived her of that right was acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). The plaintiff has alleged that Smith is a consultant but has not alleged that she is an IRIS employee. There are situations under which a private party may be deemed a

state actor. For example, a private party will be considered to have acted under "color of state law" when the state either (1) "effectively directs or controls the actions of the private party such that the state can be held responsible for the private party's decision"; or (2) "delegates a public function to a private entity." Johnson v. LaRabida Children's Hosp., 372 F.3d 894, 896 (2004) (citing Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 628 (7th Cir. 1999). The fact that a private actor was a consultant of the government is insufficient to establish that the private party acted under "color of state law." Bowman v. City of Franklin, 980 F.2d 1104, 1108 (7th Cir. 1992) ("The mere fact that Zimmerman acted as consulting engineers on this project is insufficient to establish state action.") "Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." Rendell–Baker v. Kohn, 457 U.S. 830, 841, (1982).

The plaintiff has alleged only that Smith is a consultant. Dkt. No. 7 at 2. She has not alleged any facts showing that IRIS, a state actor, either (1) directed or controlled the actions of the defendant such that the state could be responsible for the defendant's actions or (2) delegated a public function to the defendant. The amended complaint states that Smith, an IRIS consultant, "started relating to [the plaintiff] with threatening statements and was not willing to make any adjustments." Dkt. No. 7 at 2. The plaintiff cites exhibits but there are no exhibits to the amended complaint. Id. Rather than alleging that IRIS directed or controlled Smith's actions, the plaintiff argues at page

12

seven of her response that IRIS should have detected Smith's actions and assigned the plaintiff a different consultant. Dkt. No. 18 at 2. She implies that IRIS didn't know what Smith was doing and didn't control her actions.

The plaintiff's response calls Smith's "code of ethic in practice" "questionable." Dkt. No. 18 at 4. She addresses the conditions that Smith imposed—meeting outside [the plaintiff's] home, the need for an interpreter for Smith, and the removal of a family member. Id. at 5. Even if these allegations are true, they have nothing to do with the plaintiff's race or national origin. The plaintiff's own submissions offer reasons the conditions were imposed that have nothing to do with the equal protection clause:

> The removal of a family member ([the plaintiff's] second daughter, Itohowo Etudor's (Ms IT)) case in point—Ms IT was assaulted with substance at work by the Director (Joyce), Little Leader Academy. This substance was later identified as spirit acid by the source in question (Mind Reader). Also reported is that a member of her previous household ordered pizza within the same week of the attack and it happened that that pizza was treated with substance that dispositioned Ms IT. There was a hospital visit that resulted in Ms IT being examined and since then Ms IT has been strictly controlled by the Mind Reader resource (system). She moved in with Madam [the plaintiff] being her mother. Michelle should have directed the control of Ms IT to the system she seems to affiliate with if she wanted to meet with [the plaintiff].

Id.

The plaintiff's response includes an email from Ndon in which Ndon suggests that Smith is "either out of state and/or not among the living from the source I used to identify as unknown, recently identified as a mind reader and other resources owned by the US Department." Id. at 6. The email goes on to suggest that Ndon's younger sister is being controlled "by the same system

13

electronically." Id. The response goes on to explain that "Michelle seems to affiliate with the Mind Reader Resource. Joyce, the Director of Little Leaders Academy has in many occasions indicated that she was the Michelle look-alike who visited with [the plaintiff]." Id. She then cites the IRIS Participant Handbook, which states "a consultant is a trained individual in your community who helps you understand IRIS requirements; helps you develop and implement a support and service plan' and provides assistance as you request." Id.

In the plaintiff's (or Ndon's) own words, Smith acted as a consultant—a trained individual helping her understand IRIS requirements. The plaintiff has not alleged anything that would suggest to this court that IRIS controlled Smith's actions. The plaintiff's own allegations imply the opposite—that the plaintiff is upset because IRIS *wasn't* controlling Smith's actions. Dkt. No. 18 at 7.

Even if the court assumes that Smith qualifies as a state actor, the plaintiff has not stated sufficient facts to support a claim of discrimination based on national origin. At the end of her statement of claim, the plaintiff alleges she is Nigerian American. Dkt. No. 7 at 3. At screening, the court gave the plaintiff the benefit of the doubt. Since then, the plaintiff (or Ndon) has filed several documents, and none of them contain facts demonstrating that Smith acted based on race. Indeed, the plaintiff/Ndon addresses Smith's arguments about the absence of any such allegation on page eight of the response brief:

> The standard of review employed features "silence" while [the plaintiff] and her relatives are treated with substances amounting to

14

> negative medications causing her and the rest of the family members emotional distresses and loss of enjoyment of life. Wisconsin views the loss of enjoyment of life as a proper, separate element of damages, stating 'Loss of enjoyment of life" to include those damages that result in one's diminished capacity for enjoying life due to deprivations of basic necessities of life (Kircher, 2007)

Dkt. No. 18 at 8. The court has no idea what this means, and it doesn't show that Smith acted based on race. The remaining arguments under this section of the brief focus on the alleged violation of due process by the state courts. Id. at 9.

The plaintiff wants this court to review the decision to terminate her enrollment in the state IRIS program and wants the court to reinstate her in the program. Federal courts do not have general appellate authority over state courts or state agencies. Hameetman v. City of Chi., 776 F.2d 636, 640 (7th Cir. 1985). The court explained to the plaintiff in its June 11, 2018 order why she could not use this court to seek review of the state agency's decision. Dkt. No. 5 at 8-10. Although the court allowed the plaintiff to proceed on her claim against Smith, the plaintiff has failed to come forward with any factual basis to support her theory that Smith acted under color of state law or otherwise violated her constitutional rights.

The court is mindful that the plaintiff referenced 42 U.S.C §1981a in the amended complaint saying it is "applicable here against a party who engages in an unlawful intentional discrimination" and that she is "Nigerian American." Dkt. No. 7 at 3. Section 1983 provides the exclusive remedy for a violation of §1981 committed by state actors. As explained above, the plaintiff has failed to allege that Smith is a state actor.

15

Section 1981 provides that all persons shall have the same rights as white citizens to make and enforce contracts, which includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981. Any claim brought under §1981 must identify an impaired contractual relationship and allege the impairment is caused by racially motivated reasons. See Domino's Pizza v. McDonald, 546 U.S. 470 (2006). The plaintiff did not have a contractual relationship with Smith. If she means to allege that Smith interfered with a third-party contractual relationship, she hasn't alleged sufficient facts to support that claim, either. She has not alleged that Smith spoke threateningly to her, or imposed unreasonable conditions on her, because she is Nigerian American.

The plaintiff has not alleged that Smith is a state actor. She has not alleged that Smith took any actions based on her national origin. It appears that the plaintiff may have had her daughter—who is not an attorney—file various pleadings on her behalf, many of which allege injuries to the plaintiff's *daughter* even though her daughter is not a party. Or perhaps the plaintiff's daughter has filed all these documents without her mother's knowledge. Either way, the complaint is improperly filed and does not state a claim upon which a federal court may grant relief.

II. **Conclusion**

The court **ORDERS** that defendant Smith's motion to dismiss is **GRANTED**. Dkt. No. 15.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE** (in case the plaintiff is not aware of her daughter's actions and may have valid claims in the future).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 4th day of March, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**